1
2
3
4
5

Christopher Kende (SBN 182711)
COZEN O'CONNOR
16th Floor
45 Broadway Atrium
New York, New York 10006
Telephone: 212.509.9400
Toll Free Phone: 800.437.7040
Facsimile: 212.509.9492

6   Attorneys for AIR FRANCE KLM AIRLINES

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  VIOLETTE MANSOOR,

12              Plaintiff,

13      vs.

14  AIR FRANCE KLM AIRLINES,

15              Defendant..

16

17

18

| | |
|---|---|
| Case No.: 08 CV 0828 JM RBB | |
| **TEXT OF UNREPORTED CASES CITED IN DEFENDANT'S MOTION TO DISMISS** | |
| Judge: | Hon. Jeffrey T. Miller |
| Magistrate: | Judge Ruben B. Brooks |
| Date: | September 5, 2008 |
| Time: | 1:30 p.m. |
| Courtroom: | 16 |

19      TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

20      Defendant AIR FRANCE KLM AIRLINES, hereby submits the text of the following in

21  support of its Motion to Dismiss Plaintiff's complaint.

22      1.      *Rafailov v. El Al Israel Airlines, Ltd.* (S.D.N.Y. May 13, 2008) 2008 WL 2047610;

23      2.      *Sethy v. Malev-Hungarian Airlines* (S.D.N.Y. 2001) 2000 WL 1234660, *aff'd* (2d Cir.

24  2001) 13 Fed. Appx. 18;

25  ///

26  ///

27  ///

28

1    ///

2        3.    *Wiprank v. Air Canada* (C.D. Cal. May 15, 2007) 2007 WL 2441066.

3

4    DATED:  July 28, 2008                COZEN O'CONNOR

5

6                                        By: _____

7                                        CHRISTOPHER KENDE
                                         Attorneys for AIR FRANCE KLM AIRLINES

8

9

10   ::ODMA\PCDOCS\SAN_DIEGO\439881\1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Westlaw.

Slip Copy                                                    Page 1
Slip Copy, 2008 WL 2047610 (S.D.N.Y.)
**2008 WL 2047610 (S.D.N.Y.)**

C
Rafailov v. El Al Israel Airlines, Ltd.
S.D.N.Y.,2008.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Liora RAFAILOV and Roma Rafailov, Plaintiffs,
v.
EL AL ISRAEL AIRLINES, LTD., Defendant.
**No. 06 CV 13318(GBD).**

May 13, 2008.

*MEMORANDUM DECISION AND ORDER*

GEORGE B. DANIELS, District Judge.
*1 Plaintiff Liora Rafailov, ("plaintiff") brought suit against defendant, El Al Israel Airlines, Ltd., seeking damages pursuant to the Convention for the Unification of Certain Rules for International Carriage by Air ("Montreal Convention") for injuries sustained while aboard an El Al flight. In this same action, Roma Rafailov, plaintiff's husband, also brought suit against El Al, alleging loss of his wife's services after the incident. Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant's motion for summary judgment is granted.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c); *June v. Town of Westfield,* 370 F.3d 255, 257 (2d Cir.2004). In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, this Court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial."*Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *Anderson,* 477 U.S. at 256) (internal quotations omitted)."[U]nsupported allegations do not create a material issue of fact."*Id.* Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor. *Byrnie v. Town of Cromwell,* 243 F.3d 93, 101 (2d Cir.2001) (citing *Anderson,* 477 U.S. at 248;*Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998)). To defeat a summary judgment motion, the nonmoving party must establish the existence of each essential element of the claim. *Silver v. City Univ. of New York,* 947 F.2d 1021, 1022, (2d Cir.1991) (per curiam) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)).

On July 13, 2005, Liora Rafailov suffered an injury while flying as a passenger aboard an EL AL airplane en route to Tel Aviv, Israel from Newark, New Jersey. During the flight, plaintiff was seated in the economy section of the aircraft, in the middle section of seats, second seat in from the starboard aisle. Plaintiff's sister was seated directly to plaintiff's right, immediately adjacent to the aisle. When plaintiff boarded the aircraft at Newark, she noticed the airline's standard issue blanket on her assigned seat and placed the blanket in the seat pocket in front of her. Plaintiff's testified that she noticed a piece of plastic and a blanket on the floor underneath her seat. Approximately three to four hours into the flight, plaintiff asked her sister to move so that plaintiff could exit her seat to walk to the lavatory. Plaintiff's sister obliged and plaintiff proceeded to exit her seat. Plaintiff's progress to the aisle was impeded, however, by a reclining seat directly in front of her. As plaintiff

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                      Page 2
Slip Copy, 2008 WL 2047610 (S.D.N.Y.)
**2008 WL 2047610 (S.D.N.Y.)**

made her way to the aisle, plaintiff slipped on a piece of plastic beneath her sister's seat and fell to the floor. Plaintiff testified that she did not see the plastic at any time prior to falling.

**\*2** Plaintiff's claim arises under the Convention for the Unification of Certain Rules for International Carriage by Air ("Montreal Convention").[FN1] The Montreal Convention exclusively governs the rights and liabilities of the parties in this action, preempting state law, as the incident giving rise to plaintiff's injury occurred on board an aircraft during the course of "international transportation" as defined by Article 1(2) of the Convention. *See El Al Israel Airlines. Ltd. v. Tseng*, 525 U.S. 155, 161, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999); *see also King v. American Airlines, Inc.,* 284 F.3d 352, 357 (2d Cir.2002).

> FN1. This Court has jurisdiction over plaintiffs' claims, as they arise under a treaty of the United States. 28 U.S.C. § 1331.

Article 17 of the Montreal Convention of 1999 provides:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Montreal Convention, art. 17(1).

Defendant's motion for summary judgment must be granted as plaintiff has failed to establish an essential element of a claim under the Montreal Convention-that an accident within the meaning of Article 17 of the Montreal Convention occurred. *See Tseng*, 525 U.S. at 162;*Air France v. Saks,* 470 U.S. 392 (1985)[FN2] (finding plaintiff's burden of establishing that an accident occurred was an indispensable element for the imposition of liability under the Montreal Convention). Plaintiff's slip and

fall, resulting in injury, while aboard El Al Flight 28 does not constitute an "accident" within the meaning of Article 17 of the Montreal Convention.

> FN2. Because the Montreal Convention recently came into force, it is appropriate to rely on cases interpreting a provision of the earlier Warsaw convention, where the equivalent provision of the Montreal Convention is substantively the same. *See* Montreal Convention, art. 17(1) ("It is expected that this provision will be construed consistently with the precedent developed under the Warsaw Convention and its related instruments."); *Baah v. Virgin Atlantic Airways Ltd.,* 473 F.Supp.2d 591 (S.D.N.Y.2007) (Stein, D.J.); *see also Paradis v. Ghana Airways Ltd.,* 348 F.Supp.2d 106, 110-11 (S.D.N.Y.) (Stein, D.J.), *aff'd,*194 Fed. Appx. 5 (2d Cir.2006).

"Not every identifiable incident or occurrence during a flight is an accident within the meaning of Article 17 even if the incident gives rise to injury."*Saks,* 470 U.S. at 403. Rather, an "accident" under the Montreal Convention is a legal construction that means "something more than an event which fortuitously occurs onboard the aircraft."*Id.* The United States Supreme Court has pronounced the controlling interpretation of the term "accident":

> Liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an *unexpected or unusual event or happening* that is external to the passenger. This definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries.

*Id.* at 405, 105 S.Ct. 1338 (emphasis added).

Courts in this Circuit have granted summary judgment in favor of a defendant airline, where a plaintiff suffered an injury under circumstances

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

*Slip Copy                                                                    Page 3
Slip Copy, 2008 WL 2047610 (S.D.N.Y.)
**2008 WL 2047610 (S.D.N.Y.)**

similar to those experienced by plaintiff in this case. *See e.g., Sethy v. Malev-Hungarian Airlines,* 2000 WL 1234660, at *4 (S.D.N.Y.2001) (Schwartz, D.J.), *aff'd,*13 Fed. Appx. 18 (2d Cir.2001) (tripping over luggage left in aisle during boarding was not an accident under Article 17 of the Montreal Convention because "there is nothing 'unexpected or unusual' about the presence of a bag in or near the aisle during the boarding process."); *cf. Waxman v. C.I.S. Mexicana De Aviacion, S.A. De C.V.,* 13 F.Supp.2d 508, 512, (S.D.N.Y.1998) (finding an accident occurred where plaintiff was pricked by a hypodermic needle protruding from an airplane seat and that the airline's failure to remove the needle constituted "an unusual, unexpected departure from ordinary procedures.").

*3 Similarly, courts outside this Circuit have held that "when traveling on an international flight, one would expect to find books, shoes, briefcases, and other items on the floor in front of, underneath and around the seats."*Craig v. Compagnie Nationale Air France,* 45 F.2d 435, 1994 WL 711916, at *1 (9th Cir.1994) (finding no accident and granting summary judgment to defendant airline where plaintiff injured herself after tripping on a pair of shoes left on the airplane floor).

The presence of a discarded blanket bag on the floor of an aircraft is no more unexpected or unusual than the presence of luggage in the aisle of an aircraft during boarding or passengers' shoes on the floor of a seat row during a flight. After four hours in flight, it is would seem customary to encounter a certain amount of refuse on an airplane floor, including blanket bags discarded by passengers who had removed the bag's contents in order to use the blanket.

The United States Court of Appeals for the Second Circuit has, in certain circumstances, held that an airline may be liable where the airline employee's unreasonable action caused the injury. *See e.g .,
Fishman v. Delta Air Lines, Inc.,* 132 F.3d 138 (2d Cir.1998). In *Fishman,* a passenger was injured when a flight attendant, attempting to soothe the

passenger's earache with a hot compress, spilled scalding water on the passenger. *See id.* at 140-41.While the procedure employed by the flight attendant may have been routine, the court in *Fishman* made clear that "an injury resulting from routine procedures in the operation of an aircraft or airline can be an 'accident' if those procedures or operations are carried out in an unreasonable manner."132 F.3d at 143 (emphasis in original) (finding flight attendant's use of "excessive, scalding" water unreasonable).

Plaintiff, here, alleges that her injuries resulted from El Al's failure to "properly clear the plane of debris before passengers boarded the plane."Pl. Memorandum of Law in Opposition to Defendant's Summary Judgment Motion 9. Notwithstanding the fact that there is no evidence in the record to support plaintiff's conclusory allegation, the United States Supreme Court has held that "the 'accident' requirement of Article 17 ... involves an inquiry into the nature of the event which *caused* the injury rather than the care taken by the airline to avert the injury."*Saks,* 470 U.S. 407 (emphasis in the original). The event that caused the passenger's injury must be an unexpected and unusual event that was external to the passenger. The event that caused the injury here-plaintiff slipping on a plastic blanket bag on the floor under a seat during flight-does not constitute an accident under Article 17 of the Montreal Convention.

Defendant's motion for summary judgment is GRANTED.

SO ORDERED:

S.D.N.Y.,2008.
Rafailov v. El Al Israel Airlines, Ltd.
Slip Copy, 2008 WL 2047610 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

## Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1234660 (S.D.N.Y.)
**2000 WL 1234660 (S.D.N.Y.)**

**H**

Sethy v. Malev-Hungarian Airlines, Inc.
S.D.N.Y.,2000.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Erno SETHY, Plaintiff,
v.
MALEV-HUNGARIAN AIRLINES, INC. d/b/a
Malev Hungarian Airlines and Malev Hungarian
Airlines Corp. d/b/a Malev Hungarian Airlines, Defendants.
No. 98 Civ. 8722(AGS).

Aug. 31, 2000.

*OPINION AND ORDER*

SCHWARTZ, J.
**\*1** This is an action to recover damages for personal injuries allegedly sustained by plaintiff on board an airplane before its departure from New York to Budapest. Plaintiff filed his Complaint in the Supreme Court of the State of New York, and defendant [FN1] subsequently filed a notice of removal to this Court pursuant to 28 U.S.C. §§ 1330, 1441(d). Currently before the Court is defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56 ("Rule 56"). For the reasons set forth below, the motion is granted.

> FN1. Although plaintiff filed suit against both Malev-Hungarian Airlines, Inc. and Malev-Hungarian Airlines Corp., both are doing business as Malev Hungarian Airlines and are considered a single defendant for the purposes of this motion.

I. Factual Background

Plaintiff Erno Sethy ("plaintiff") is an individual residing in the State of New York, New York County. (Complaint ("Compl." 1.) Defendant Malev Hungarian Airlines ("defendant") is a foreign corporation organized under the laws of the Republic of Hungary with its principal place of business in Budapest, Hungary.[FN2] (Notice of Removal ¶ 4.)

> FN2. The Complaint asserts contradictory facts with regard to the citizenship of defendant. (Compl.¶¶ 4-7.) However, plaintiff has implicitly acknowledged that defendant is a foreign state by accepting the validity of the removal of this case from state court and the exclusive applicability of the Warsaw Convention to this dispute. (Memorandum of Points and Authorities in Opposition to Defendant Malev Hungarian Airlines' Motion for Summary Judgment ("Pl.'s Mem.") at 2.)

Plaintiff asserts a single cause of action seeking damages he allegedly sustained on board Malev Flight No. 91, before its departure from New York to Budapest, Hungary on March 26, 1997. (Statement of Defendant Malev Hungarian Airlines Pursuant to Local Civil Rule 56.1 ("Def.'s 56.1") ¶ 1; Compl.) Plaintiff's passenger ticket provided for round-trip transportation from New York to Budapest. (Def.'s 56.1 ¶ 3; Deposition Transcript of Erno Sethy dated Apr. 26, 1999 ("Sethy Dep.") at 15-17, Ex. A.) He boarded the Malev aircraft approximately 40 to 60 minutes prior to departure, after "most people" had already boarded, carrying two pieces of luggage. (Def.'s 56.1 ¶¶ 5, 6; Sethy Dep. at 20-23.) He then walked down the left aisle of the aircraft to locate his assigned seat. (Def.'s 56.1 ¶ 6; Sethy Dep. at 20-23.)

According to plaintiff, the business and economy class cabins were separated by a "wall." (Def.'s 56.1 ¶ 7; Sethy Dep. at 30-31.) As he was entering the economy class cabin, plaintiff asked a Malev stewardess, standing in the opposite (right) aisle, where his seat was located. (Def.'s 56.1 ¶ 8; Sethy Dep. at 23.) The stewardess responded that his seat was in the right aisle close to where she was standing. (Def.'s 56.1 ¶ 9; Sethy Dep. at 24-25.) Plaintiff

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 2
Not Reported in F.Supp.2d, 2000 WL 1234660 (S.D.N.Y.)
**2000 WL 1234660 (S.D.N.Y.)**

immediately turned around to proceed back up the left aisle, and, while still carrying his two pieces of luggage, tripped and fell over a black bag approximately two feet in length located on the floor of the left aisle. (Def.'s 56.1 ¶¶ 10, 17; Sethy Dep. at 25-26, 28.) As he fell, plaintiff attempted to grab something, and his right hand near his fifth metacarpal (the "pinky" finger) struck the armrest of a seat, (Def.'s 56.1 ¶ 18; Sethy Dep. at 28-29), allegedly resulting in the fracture of the finger. (Sethy Dep. at 42; Pl.'s Mem. at 3.) Plaintiff did not say anything to anyone immediately after the incident; rather, he proceeded to his seat and stowed his carry-on luggage. (Def.'s 56.1 ¶ 19; Sethy Dep. at 35.)

Plaintiff did not see the bag before he tripped over it, did not see anyone place the bag behind him, and did not know the owner of the bag. (Def.'s 56.1 ¶¶ 11, 14; Sethy Dep. at 26.) There were no Malev employees in the area where plaintiff tripped and fell. (Def.'s 56.1 ¶ 16; Sethy Dep. at 27.) Further, at a deposition, plaintiff could not recall (i) whether the entire bag was in the aisle or whether it was between a row of seats and only partly protruding into the aisle, (ii) whether the bag was in the economy or business class cabin, or (iii) if any passengers were standing near the bag at the time he tripped and fell. (Def.'s 56.1 ¶¶ 12-13, 15; Sethy Dep. at 26-27, 31.)

*2 Plaintiff's Complaint was filed on November 17, 1998, defendant was served on December 2, 1998, and defendant filed its notice of removal to this Court on December 9, 1998. (Affidavit of Stephen J. Fearon dated August 24, 1999 ¶ 3.) In the Complaint, plaintiff alleges that he sustained "severe and permanent injuries" which required medical care and attention and rendered plaintiff unable to perform his "normal activities and duties." (Compl. ¶¶ 19, 22; Statement of Plaintiff Erno Sethy Pursuant to Local Civil Rule 56.1 ("Pl.'s 56.1") 1-3.)

II. Discussion

A. Summary Judgment Standard

A district court may grant summary judgment only if it is satisfied that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, which may be satisfied if it can point to the absence of evidence necessary to support an essential element of the non-moving party's claim. *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). All inferences and ambiguities are resolved in favor of the party against whom summary judgment is sought. *See Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994) (citations omitted).

If the moving party meets its burden, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat the motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for its failure to meet this requirement. *See Kolp v. New York State Office of Mental Health,* 15 F.Supp.2d 323, 326 (W.D.N.Y.1998). When reasonable minds could not differ as to the import of the proffered evidence, then summary judgment is proper. *See Anderson, supra,* 477 U.S. at 250-52; *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). Moreover, "mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment."*Cifarelli v. Village of Babylon,* 93 F.3d 47, 51 (2d Cir.1996).

B. The Warsaw Convention Exclusively Governs the Rights and Liabilities of the Parties

As a treaty of the United States, the Warsaw Convention (the "Convention") [FN3] supersedes state law and policy and is the supreme law of the land.U.S. Const. Art VI, cl. 2; *El Al Israel Airlines Ltd. v. Tseng,* 525 U.S. 155, 167 (1999). The Con-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

vention applies "to all international transportation of persons, baggage, or goods performed by aircraft for hire."Convention art. 1(1). "International transportation" includes "transportation in which, according to the contract made by the parties, the place of departure and the place of destination, are situated ... within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty ... of another power, even though that power is not a party to this Convention."*Id.* art. 1(2). The Convention clearly applies to this action because (i) the United States is a High Contracting Party, (ii) according to the contract between the parties as evidenced by plaintiff's passenger ticket, New York, which is situated "within the territory of a single High Contracting Party," is both the place of departure and destination, and (iii) Budapest is an "agreed stopping place." (Memorandum of Points and Authorities in Support of Defendant Malev Hungarian Airlines' Motion for Summary Judgment ("Def.'s Mem.") at 3-4, Ex. B; Pl.'s Mem. at 2.)

> FN3. Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), *reprinted in*49 U.S.C. § 40105 (1997).

*3 As modified by the Montreal Agreement,[FN4] the Convention makes airlines liable (up to a limit of $75,000 per passenger) "for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking and disembarking."Convention art 17.[FN5]The Supreme Court has held that where Article 17 applies, it is the exclusive remedy available to plaintiffs. *SeeTseng,supra,* 525 U.S. at 161 (stating that relief from personal injuries "if not allowed under the Convention, is not available at all"). Therefore, the Convention exclusively applies to the instant action.

> FN4. Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, CAB Agreement 189900, approved, CAN Order No. E-23680, 31 Fed.Reg. 7302 (1966).

> FN5. The Convention drafters designed Articles 17, 22, and 24 of the Convention as a compromise between the interests of air carriers and their customers worldwide. Pursuant to Article 17, carriers are denied the contractual prerogative to exclude or limit their liability for personal injury. In Articles 22 and 24, passengers are limited in the amount of damages they may recover, and are restricted in the claims they may pursue by the conditions and limits set out in the Convention. *SeeTseng,supra,* 525 U.S. at 157.

Although the Convention does not define "accident" for the purposes of Article 17, the Supreme Court held in *Air France v. Saks,* 470 U.S. 392, 405 (1985), that the term connotes an injury "caused by an unexpected or unusual event or happening that is external to the passenger."This definition should be applied flexibly "after assessment of all the circumstances surrounding a passenger's injuries."*Id.* Moreover, "the 'accident' requirement ... involves an inquiry into the nature of the event which caused the injury rather than the care taken by the airline to avert the injury."*Id.* at 407.The *Saks* Court further stated that "[a]ny injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger."*Id.* at 406.

Courts have adopted different perspectives on the extent of the flexibility required by the *Saks* definition. The courts in this Circuit have generally held that an "accident" under Article 17 must arise from "risks that are characteristic of air travel," or from the abnormal or unexpected operation of the aircraft or conduct of airline personnel. *SeeWallace v. Korean Air,* 214 F.3d 293, 298 (2d Cir.2000)

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1234660 (S.D.N.Y.)
**2000 WL 1234660 (S.D.N.Y.)**

(citing cases judging "characteristic" risks); *id.* at 300 (Pooler, J., concurring) (citing district court's test adopted by the majority); *Fishman v. Delta Air Lines, Inc.,* 132 F.3d 138, 143 (2d Cir.1998) (finding that accident arise from "some inappropriate or unintended happenstance in the operation of the aircraft or airline"). Courts have commonly held Article 17 to encompass torts or crimes committed by terrorists or fellow passengers. *See, e.g.,Saks,supra,* 470 U.S. at 405;*Wallace,supra,* 214 F.3d at 299;*Pflug v. Egyptair Corp.,* 961 F.2d 26, 29 (2d Cir.1992); *Day v. Trans World Airlines,* 528 F.2d 31, 33 (2d Cir.1975); *Margrave v. British Airways,* 643 F.Supp. 510, 512 (S.D.N.Y.1986); *Oliver v. Scandanavian Airlines Sys.,* 17 CCH Av. Cas. 18,283, 18,284 (D.Md.1983). Article 17 has also been interpreted to encompass injuries caused by the actions of airline employees. *See, e.g.,Fishman,supra,* 132 F.3d at 141-43 (finding that scalding injuries from stewardess' application if over-hot compress was Article 17 accident). Under similar rationales, courts of this district have declined to recognize Article 17 violations where the cause of the injury is determined not to be a risk characteristic of air travel, or does not relate to the operations of the aircraft or its employees. *See, e.g.,Curley v. American Airlines, Inc.,* 846 F.Supp. 280, 283 (S.D.N.Y.1994); *Price v. British Airways,* No. 91 Civ. 4847, 1992 WL 170679, at *3 (S.D.N.Y.).

*4 Other courts have cast a "wider net," and have found Article 17 applicable to injuries caused by passengers falling while walking from the gate to the plane during embarkation, mishaps altogether unrelated to the operation of the aircraft or the conduct of its personnel. *SeeGezzi v. British Airways PLC,* 991 F.2d 603, 605 (9th Cir.1993) (holding that water on staircase used to access airport tarmac for boarding purposes was Article 17 accident); *Barratt v. Trinidad & Tabago,* No. CV 88-3945, 1990 WL 127590, at *2 (E.D.N.Y.) (rejecting contention that trip and fall within an airline terminal can never come within scope of Article 17, in the context of passenger's fall down stairs used for embarkation).

**C. Defendant is Entitled to Summary Judgment**

Defendant moves for summary judgment on the ground that the incident that caused plaintiff's injury is not an "accident" within the meaning of Article 17 of the Convention. While this Circuit "has yet to choose definitively between the competing interpretations of the term 'accident," ' outlined above, *Wallace,supra,* 214 F.3d at 299, this case does not require us to do so. Adopting a flexible and broad definition of "accident" after assessing "all of the circumstances surrounding [plaintiff's] injuries," *Saks,supra,* 470 U.S. at 405, the Court finds that plaintiff's injury does not constitute an accident within the meaning of Article 17. The "nature of the event which caused the injury," *Id.* at 407, was the unfortunate presence of a bag in the aisle (or protruding into the aisle) of the Malev plane during the boarding process. While the bag may be external to plaintiff, there is nothing "unexpected or unusual" about the presence of a bag in or near the aisle during the boarding process. Plaintiff boarded the plane 40 to 60 minutes before the plane's departure, before all passengers had boarded and well before take-off. At this juncture in particular, the boarding process allows passengers to place their bags in a position that would ensure passenger safety during the flight. It would therefore seem customary for bags such as the one plaintiff encountered to be at various locations of the cabin. Plaintiff himself was moving about the cabin with two such bags.

Plaintiff has not alleged anything concerning the circumstances surrounding his accident that would constitute a departure from normal boarding procedures. *SeeSaks,supra,* 470 U.S. at 406 (finding that passenger's deafness resulting from air pressure changes during flight was a result of plaintiff's "internal reaction to the usual, normal, and expected operation of the aircraft"). In particular, plaintiff cannot point to any act or omission by the airline's crew or passengers that could have caused his alleged injury.[FN6] He was unable to specify the precise location of the bag or how the bag arrived at

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1234660 (S.D.N.Y.)
2000 WL 1234660 (S.D.N.Y.)

that location; nor could he recall if anyone at all was standing near the bag. While the Court is mindful of the "virtual strict liability" that Article 17 imposes on airlines, *Wallace,supra,* 214 F.3d at 297, 299, a determination that plaintiff's injury amounts to an "accident" under that provision would be tantamount to the imposition of strict liability on air carriers, which the drafters of the Convention clearly did not countenance. *See id.* at 296-97 (discussing the Convention's liability regime); *Margrave,supra,* 643 F.Supp. at 515 (cautioning courts to be aware of the "reckless invocation" of the Convention by litigants as liability is "nearly absolute," and stating that cases must be dismissed where the plaintiff cannot support its burden of proof).

> FN6. Plaintiff makes the conclusory allegation that defendant's employees "failed to conduct themselves properly" in assisting passengers to store their luggage in the overhead compartments. (Pl.'s Mem. at 5.) However, plaintiff points to no facts that would indicate that defendant's employees knew about the bag and acknowledges that no Malev employee was in the vicinity. Moreover, nothing in the record indicates that the bag was or should have been placed in an overhead compartment. In addition, plaintiff points to the fact that members of the flight crew provided him ice packs for his injured hand in order to show that defendant was "aware of the situation." (Pl.'s Mem. at 4-5, 7.) However, even if defendant became aware of plaintiff's condition, which is not clear from the record, such awareness is irrelevant to the cause of the alleged injury, and therefore does not implicate whether the injury constitutes an "accident" within the meaning of the Convention.

III. Conclusion

*5 Because plaintiff's alleged injury is not an "accident" within the meaning of Article 17 of the Warsaw Convention, there is no triable issue of fact with regard to plaintiff's tort claim. Accordingly, defendant's motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment for defendant and to close the file in this action.

SO ORDERED.

S.D.N.Y.,2000.
Sethy v. Malev-Hungarian Airlines, Inc.
Not Reported in F.Supp.2d, 2000 WL 1234660 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2441066 (C.D.Cal.)
**2007 WL 2441066 (C.D.Cal.)**

Wipranik v. Air Canada
C.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,C.D. California.
Yona WIPRANIK
v.
AIR CANADA, et al.
No. CV 06-3763 AHM (AJWx).

May 15, 2007.

Daniel J. Cheren, Cheren & Associates, Encino, CA, for Yona Wipranik.
Cory A. Baskin, Mitchell J. Popham, Sheela H. Shah, Lord Bissell & Brook, Los Angeles, CA, for Air Canada, et al.

A. HOWARD MATZ, U.S. District Judge.

*1 Plaintiff, Yona Wipranik, has sued Air Canada for a burn injury she sustained during a flight from Toronto to Tel Aviv. At issue is whether this injury was caused by an "accident" under the Warsaw Convention. Defendant has moved for summary judgment on this issue. Plaintiff opposed the motion for summary judgment and filed a cross motion for summary adjudication. For the following reasons, the Court GRANTS partial summary adjudication to Plaintiff.

**I. Defendant's Motion for Summary Judgment**

**A. Background**

Defendant moved for summary judgment solely on the basis that the cause of Wipranik's injury was not an "accident" under the Warsaw Convention. In support of their motion, Defendants submitted the following statement of undisputed facts:

1. Plaintiff Yona Wipranik ("Wipranik") filed a suit for damages stemming from injuries allegedly suffered by her on June 23, 2004 while aboard an Air Canada flight from Toronto, Canada to Tel Aviv, Israel (the "Subject Flight").

2. Plaintiff filed a lawsuit in June 2006 against Air Canada.

3. Plaintiff's Complaint alleges that she suffered second and third degree burns from tea that spilled on her lap and legs.

4. In her Complaint, Plaintiff brings claims against Air Canada under Article 17 of the Warsaw Convention and Article 21.1 of the Montreal Convention.

5. Plaintiff flew on Air Canada from Los Angeles to Toronto and took a connecting Air Canada flight from Toronto to Tel Aviv.

6. During the Subject Flight, she was seated in an aisle seat in the economy class section of the plane. Plaintiff's son, Doron, was seated to her right and the aisle was to her left. There were two other passengers seated next to Doron to his right, in that row. Lennie Nourafchan was seated across the aisle to the left of Plaintiff

7. The Subject Flight was crowded.

8. Plaintiff did not request and did not receive the hot tea when the flight attendants made their first pass through the cabin with the beverage cart.

9. Shortly after the flight attendants made their first pass through the cabin with the beverage cart, Plaintiff left her seat and went to the galley behind her seat to ask for hot tea.

10. A flight attendant prepared the tea, poured it directly out of the tea machine into a basic Styrofoam cup and then handed it to Plaintiff.

11. After Plaintiff returned to her seat, she unhooked the tray (attached to the seat in front of her) and placed the cup in the middle of the tray.

12. Plaintiff does not recall whether there was a cupholder on the tray.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2441066 (C.D.Cal.)
2007 WL 2441066 (C.D.Cal.)

13. Plaintiff did not see anything out of the ordinary about the tray prior to placing the tea on the tray.

14. Shortly after Plaintiff placed the cup of tea on the tray, the passenger in front of Plaintiff moved in his or her seat which caused the cup of tea to slide off the tray and on to Plaintiff's lap.

15. Forty minutes passed from the time the aircraft took off until the time of the occurrence.

*2 16. No tea was spilled on the tray or Plaintiff's seat.

17. Plaintiff inspected the tray after the fact and it did not seem stable but that it would "not do anything unless someone moves it."

18. It was the "movement [that] shook [the tray] and ma[d]e it tilt."

19. Plaintiff was the only one who saw the incident actually happen.

20. Plaintiff was treated for her injuries at the Hadassah Ein Kerem University Hospital in Jerusalem.

21. Since the occurrence, Plaintiff saw a doctor twice in Israel regarding injuries allegedly sustained from the occurrence.

22. Since medical expenses are socialized in Israel, Plaintiff has no medical expenses or damages resulting from the occurrence.

23. Plaintiff never saw another doctor once she returned to the United States for the alleged injuries that she suffered from the occurrence.

24. Plaintiff was not employed at the time of the occurrence and has suffered no loss of income as a result of the occurrence.

**B. Legal Standard**

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial."*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248.The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial.*Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."*C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.,* 213 F.3d 474, 480 (9th Cir.2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the nonmoving party. The moving party need not disprove the other party's case. *See Celotex,* 477 U.S. at 325.Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.' " *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 805-06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (*citing Celotex,* 477 U.S. at 322).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                          Page 3
Not Reported in F.Supp.2d, 2007 WL 2441066 (C.D.Cal.)
**2007 WL 2441066 (C.D.Cal.)**

the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."Fed. R. Civ.P. 56(e). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.;Beyene v. Coleman Sec. Serv., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988).

**\*3** "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.' " *Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (quoting *Anderson,* 477 U.S. at 255). But the nonmoving party must come forward with more than "the mere existence of a scintilla of evidence" *Anderson,* 477 U.S. at 252.Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

Simply because the facts are undisputed does not make summary judgment appropriate. Instead, where divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is improper. *Braxton-Secret v. A.H. Robins Co.,* 769 F.2d 528, 531 (9th Cir.1985).

## C. Analysis

Wipranik contends that Air Canada is liable to her for injuries caused by the tea that spilled on her thigh during the flight from Toronto to Tel Aviv. She claims that Air Canada is liable under both the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934) ("Warsaw Convention") and the later-enacted Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, *reprinted in* S. Treaty Doc. No. 106-45 (2000) ( "Montreal Convention"). (Compl.¶¶ 6, 9). In their moving papers, the parties only deal with the resolution of Plaintiff's claims under the Warsaw Convention. Accordingly, the Court will not address the potential applicability of the Montreal Convention.

## 1. The Warsaw Convention

The Warsaw Convention is a multilateral treaty that was adopted in 1929. Most countries with international air transportation routes, including Canada, the United States, and Israel, are signatories. The Warsaw Convention sets forth the circumstances pursuant to which an air carrier can be held liable for injuries to its passengers or their baggage. *See Air France v. Saks,* 470 U.S. 392, 397, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985). Article 17, which governs the liability of air carriers to their passengers, states:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking,

In this case, there is no question that Plaintiff sustained injury on board the aircraft. The only issue is whether her injury was caused by an "accident" within the meaning of Article 17 of the Warsaw Convention.

## 2. Meaning of "Accident"

As noted above, the sole issue in Defendant's motion is whether Wipranik's injury was caused by an "accident" under the Warsaw Convention. The Supreme Court has defined "accident" under the Warsaw Convention as "an unexpected or unusual event or happening that is external to the passenger."*Saks,* 470 U.S. at 405.In determining whether

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2441066 (C.D.Cal.)
**2007 WL 2441066 (C.D.Cal.)**

an "accident" has occurred within the meaning of the Warsaw Convention, courts must decide whether the *cause* of the injury was unexpected or unusual. *Id.* at 399-400."But when the injury indisputably results from the passenger's own internal reaction to the usual, normal and expected operation of the aircraft, it has not been caused by an accident ..."*Id.* at 406.The Court has further counseled that "[t]his definition [of "accident"] should be flexibly applied after assessment of all the circumstances surrounding the passenger's injuries."*Saks,* 470 U.S. at 405.

*\*4 In *Saks,* the Supreme Court determined that no accident occurred when the passenger lost her hearing in one ear after feeling pain during the aircraft's descent. 470 U.S. at 406.The Court found that the passenger's injury occurred without any showing that the pressurization system had not operated in a normal manner. *Id.* Rather, the Court determined that the passenger's injury was caused by her internal reaction to the normal operations of the aircraft and therefore did not constitute an accident. *Id. See also, Padilla v. Olympic Airways,* 765 F.Supp. 835 (E.D.N.Y.1991) (no accident occurred when the passenger consumed eight to ten beers and then fell and injured himself on the way to the lavatory); *Gotz v. Delta Airlines,* 12 F.Supp.2d 199, 201 (D.Mass.1998) (finding that no accident occurred where passenger tore rotator cuffs after he hyperextended his arms to avoid hitting another passenger who suddenly stood up to retrieve something from the overhead bin while Gotz was attempting to stow a heavy bag).[FN1]

> FN1. Although *Gotz* is a case from the District of Massachusetts, Defendant urges this Court to follow it as "controlling" precedent. (Def. Mot. at 11; Def. Reply at 4).*Gotz* is not binding on this Court. Moreover, *Gotz* expanded the definition of "accident" to require the cause of an injury to be not only an unusual or unexpected event but also the result of a malfunction or abnormality in the aircraft's operation. 12 F.Supp.2d at 210-02.Such an expanded

definition has already been rejected by the Ninth Circuit. *See Gezzi v. British Airways PLC,* 991 F.2d 603, 605 n. 4 (9th Cir.1993). In light of the differences between *Gotz* and the law in this Circuit, *Gotz* has little, if any, persuasive value. It is certainly far from "controlling."

In the Ninth Circuit, courts have interpreted "accident" to encompass the following events:

1. Passenger died from asthmatic attack after flight crew refused to move him away from smoking section of the plane even though the crew was told the passenger was asthmatic and was having difficulty breathing. *See Husain v. Olympic Airways.* 316 F.3d 829 (9th Cir.2002), *aff'd*540 U.S. 644, 124 S.Ct. 1221, 157 L.Ed.2d 1146 (2003).

2. A passenger died several days after airline personnel took her carry-on bag and lost it, despite the fact that the airline had been told the bag contained a breathing device and medication and needed to remain with the passenger at all times. *See Prescod v. AMR, Inc.,* 383 F.3d 861867-69 (9th Cir.2004).

3. Passenger's injuries after he slipped on landing stairs were caused by two "accidents": water on the stairs, and the flight attendant's refusal to assist plaintiff down the staircase. *See Gezzi v. British Airways, PLC,* 991 F.2d 603, 604 (9th Cir.1993) (per curiam).

4. Passenger's toe injured after another passenger, struggling with putting her luggage in overhead bin, tripped and stepped on his foot. *See Kwon v. Singapore Airlines,* 356 F.Supp.2d 1041, 1044-45 (N.D.Cal.2003) (Zimmerman, J.) ("The stowing of luggage by people who are too short to comfortably reach the overhead compartment, which is provided by the airline as an amenity for passengers, and the inability of passengers to move during boarding when the aisle is being blocked in front by a passenger stowing luggage and in

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 2007 WL 2441066 (C.D.Cal.)
**2007 WL 2441066 (C.D.Cal.)**

back by other passengers trying to get to their seats are hallmarks of air travel").

*See also Maxwell v. Aer Lingus, Ltd.,* 122 f. Supp.2d 210, 212-13 (D.Mass.2000) (court held that an accident occurred when the passenger was injured by a fellow passenger's bag of liquor bottles that fell from the overhead bin); *Waxman v. C.I.S. Mexicana de Aviacion S.A.,* 13 F.Supp.2d. 508, 512 (S.D.N.Y.1998) (court held that an accident occurred when the passenger was stuck in the leg by a hypodermic needle protruding from the seat in front of him); *Diaz Lugo v. Am. Airlines, Inc.* 686 F.Supp. 373, 375 (D.P.R.1988) (Court held that an accident occurred when the passenger suffered burns from hot coffee that spilled in her lap after flight attendant place the coffee on her tray table and did not alert her that it was there. "The coffee spill was an unusual or unexpected event external to Figueroa and, thus, an Article 17 'accident.' When a person boards a plane, he does not expect that a cup of coffee will spill over his lap. The usual operation of an airplane does not require passengers to be spilled with hot coffee.").

**3. Application of Article 17 to this Case**

*5 Under *Saks,* Plaintiff must show that her injury was caused by (1) an external event; (2) that was unusual or unexpected; and (3) took place during the operation of the aircraft. There is no dispute that plaintiff was injured during the operation of the aircraft (that is, during flight). The slide of the tea off of the tray table and its fall onto Plaintiff's lap were events "external" to Plaintiff. Moreover, those events were unusual and unexpected. Although it may be common for an airline seat to shake when its occupant moves around, it is not common for beverages placed on the tray table behind that seat to be so jolted by the movement that they fall onto another passenger. It is the failure of the tray table to hold beverages securely despite passenger movement in the seat in front that is *unexpected.*

For the foregoing reasons, I DENY Defendant's

motion for summary judgment.

**II. Wipranik's Cross-Motion for Summary Adjudication**

Wipranik moved for summary adjudication not only as to the meaning of accident but also as to Defendant's liability for her injuries. The relevant facts are stated in Part I.A, *supra.* In its opposition to Plaintiff's cross-motion, Defendant does not raise any genuine dispute of material fact.

**A. The Meaning of "Accident"**

For the reasons stated in Part I.C, *supra,* the Court GRANTS Plaintiff's motion for summary adjudication at to whether her injury was caused by an "accident" under the Warsaw Convention.

**B. Contributory Negligence**

The only issue remaining is whether Plaintiff's own negligence contributed, in whole or in part, to cause her injury. Article 21 of the Warsaw Convention limits liability for an "accident" based on Plaintiff's contributory negligence. Article 21 states:

> If the carrier proves that the damage was caused by or contributed to by the negligence of the injured person the court may, in accordance with the provisions of its own law, exonerate the carrier wholly or partly from his liability.

Negligence under Article 21 is in the nature of comparative negligence, rather than a traditional contributory negligence standard. *See Husain v. Olympic Airways,* 116 F.Supp.2d 1121, 1141 (N.D.Cal.2000), aff'd, 316 F.3d 829 (9th Cir.2002), aff'd 540 U.S. 644, 124 S.Ct. 1221, 157 L.Ed.2d 1146 (2003).

At the hearing on this motion, Defendant argued that, it will show at trial that Plaintiff's own negligence was the only cause of her burn injury. The

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                     Page 6
Not Reported in F.Supp.2d, 2007 WL 2441066 (C.D.Cal.)
2007 WL 2441066 (C.D.Cal.)

only "fact" Defendant has proffered in support of this notion is the putative testimony of James Kent, a certified medical investigator. Defendant did not submit or file a declaration of Kent or any deposition testimony he may have given. Indeed, it was Plaintiff who submitted Kent's expert report. Moreover, Defendant's contention at the hearing is in stark contrast to the statement of undisputed facts that it submitted and that this Court adopted. (*See* Part I.A, *supra* ). Defendant's own statement of undisputed facts does not mention Plaintiff spilling any tea on herself before placing the cup on the tray and the only cause of the accident the statement contains is that the movement of the passenger in front of Plaintiff caused the tea to slide off the tray table and onto Plaintiff's lap. (*See* SUF ¶ 14).

*6 In addition, even Kent's report does not support Defendant's theory that Plaintiff was the sole cause of her injury. Rather, in his report, Kent merely opined that it was "more probable than not that Plaintiff spilled tea onto herself" while she was "attempting to sit down ...." Kent may have meant to suggest that no tea spilled onto Plaintiff from the tray, but he certainly did not say so.

Defendant has not presented sufficient evidence to create a genuine issue of material fact as to whether Plaintiff was wholly responsible for her injury. Accordingly, the Court GRANTS summary adjudication to Plaintiff that Defendant is liable for her injury, at least in part.

As Plaintiff conceded at the hearing, however, Kent's report creates a genuine issue as to whether Plaintiff herself contributed to her injury by her own negligence. How much (if any) of Plaintiff's injury and any corresponding reduction in the amount of damages she is awarded are questions that must be resolved by the jury. Accordingly, complete summary judgment for Plaintiff is not appropriate.

IT IS SO ORDERED.[FN2]

FN2. This Order is not intended for public-

ation. No hearing is necessary. Fed.R.Civ.P.78;L.R.7-15.

C.D.Cal.,2007.
Wipranik v. Air Canada
Not Reported in F.Supp.2d, 2007 WL 2441066 (C.D.Cal.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.