1   Christopher Kende (SBN 182711)
    COZEN O'CONNOR
2   16th Floor
    45 Broadway Atrium
3   New York, New York 10006
    Telephone: 212.509.9400
4   Toll Free Phone: 800.437.7040
    Facsimile: 212.509.9492

5
    Attorneys for AIR FRANCE KLM AIRLINES
6

7

8                    UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11  VIOLETTE MANSOOR,              )  Case No.: 08 CV 0828 JM RBB
                                   )
12        Plaintiff,               )  **MEMORANDUM OF POINTS AND**
                                   )  **AUTHORITIES IN SUPPORT OF**
13      vs.                        )  **AMENDED MOTION TO DISMISS**
                                   )  **FOR FAILURE TO STATE A CLAIM**
14  AIR FRANCE KLM AIRLINES,       )  **UPON WHICH RELIEF CAN BE**
                                   )  **GRANTED**
15        Defendant..              )  **(FRCP 12(b)6)**
                                   )
16                                 )  Judge:       Hon. Jeffrey T. Miller
                                   )  Magistrate:  Judge Ruben B. Brooks
17                                 )
                                   )  Date:        September 26, 2008
18  _____  )  Time:        1:30 p.m.
                                      Courtroom:   16

19        Defendant Air France KLM Airlines (hereinafter "Air France") respectfully submits this

20  Memorandum of Points and Authorities in support of its Amended Motion to dismiss the Complaint

21  in this action for failure to state a claim.[1]

22        The entirety of the substantive factual allegations in the Complaint comprise a single

23  sentence: "During Air France Flight 307 from Atlanta to Paris, on May 6, 2006, the plaintiff

24  sustained serious personal injuries when she tripped and fell as a result of a hazard in the walkway

25  onboard the aircraft." Complaint, ¶ 19. An incident occurring aboard an aircraft in flight is subject

26

27  [1]      The only change over the original Motion and Memorandum filed herein is the addition of an
    explanation of the impact of the Ninth Circuit's opinion in *Twadorski v. American Airlines,*(9th Cir.
28  July 30, 2008) 2008 WL 2908101, an opinion which just issued on July 30, 2008, and which is
    directly on point. The hearing date for this Motion has also been changed at Plaintiff's request.
                                        1              Case No.: 08 CV 0828 JM RBB
          MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMENDED MOTION TO DISMISS

1  to the provisions of the Montreal Convention,[2] a point conceded by plaintiff in her Complaint. The

2  Supreme Court, in applying the Convention, has held that liability thereunder does not arise except

3  as a result of an accident, which is defined as "an unexpected or unusual event or happening that is

4  external to the passenger." Subsequent courts, following the Supreme Court's construction of the

5  Convention, have repeatedly dismissed claims involving trips and falls on aircraft, even when over

6  objects in the aisles, on the basis that those are not "unexpected or unusual events" within the

7  meaning of the Convention. For this reason, the bare bones Complaint herein should be dismissed.

8  **I.    Statement of Material Facts**

9            As noted, the Complaint herein is extremely thin. With respect to what is material to this

10  motion, the Complaint asserts only that the plaintiff, Violette Mansoor, was on board an Air France

11  airliner on the Atlanta to Paris leg of a trip from San Diego to Dubai, on a ticket purchased in

12  California, when she tripped and fell in the aisle. Complaint, ¶¶ 14, 18, 19. No description is given

13  of what caused her to fall, other than that there allegedly was some "hazard"[3] in the aisle. *Id.*, ¶ 19.

14  No description of her alleged injuries is provided either, other than that they allegedly were serious

15  and permanent. *Id.*, ¶ 26.

16            In the Complaint, plaintiff asserts that Air France was negligent in three ways: (1) failing to

17  take precautions to anticipate the conditions that caused the allegedly hazardous condition; (2)

18  failing to avoid the allegedly hazardous condition;[4] and (3) failing to warn of the hazards in the aisle

19  between the seats.

20  **II.    Argument**

21            All parties agree that Article 17 of the Montreal Convention, which applies to any personal

22  injury or death occurring onboard an aircraft while the passenger is either boarding, traveling

23  onboard or disembarking, governs this matter. *See* Complaint, ¶ 20 ("The plaintiff sustained bodily

---

[2]      Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, CAB Agreement 189900, approved CAN Order No. E-23680, 31 Fed. Reg. 7302 (1966).

[3]      In subsequent correspondence, plaintiff's counsel asserted that the 79-year old plaintiff tripped over either a passenger's foot, some loose underseat carry-on, or some other loose impediment.

[4]      There appears to be no discernable difference between # 1 and # 2.

1    injury as a result of an accident on board an Air France aircraft during Flight 307 within the meaning

2    of Article 17 of the Montreal Convention"). While it is not entirely clear whether the Complaint

3    means to interpose any state law claims, to the extent any of its claims may be characterized as such,

4    which may be the case for plaintiff's claims of failure to take precautions, failure to avoid hazardous

5    conditions and failure to warn claim (*see* Complaint, ¶ 25 (a) - (c)), all such claims would be

6    preempted. *See El Al Israel Airlines Ltd. v. Tseng* (1999) 525 U.S. 155, 161 (where Article 17 of the

7    Convention applies, it is the exclusive remedy); *Magan v. Lufthansa German Airlines* (2d Cir. 2003)

8    339 F.3d. 158; *Paradis v. Ghana Airways, Ltd.* (S.D.N.Y. 2004) 348 F. Supp.2d 106, 108. Only

9    claims which are allowable under the Montreal Convention may be brought.

10        The Montreal Convention replaced the previously effective Warsaw Convention. Liability

11    thereunder is governed by the seminal case of *Air France v. Saks* (1985) 470 U.S. 392. In that case,

12    the Supreme Court ruled that to qualify as an "accident" within the meaning of the Warsaw

13    Convention (and, consequently, the Montreal Convention) there had to be an "unexpected or unusual

14    event or happening that is external to the passenger." Stated otherwise, what matters is not whether

15    the *occurrence* of the accident was unexpected or unusual, but whether the *cause* of the accident was

16    unexpected or unusual. As the cases have made clear, an "accident" is not merely an abnormal

17    reaction of a passenger to some ordinary condition or happening; rather, it must the result of

18    abnormal or unusual operation of the aircraft. "[W]hen the injury indisputably results from the

19    passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has

20    not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply." *Saks,*

21    *supra,* 470 U.S. at 406.

22        Thus, where an accident results from a passenger's reaction to the usual, normal or expected

23    operation of the aircraft, it is not deemed to be an "accident" within the meaning of the Montreal

24    Convention, and liability cannot result. Notably in that regard, courts have routinely dismissed

25    claims contending that tripping over objects in the walkway or surrounding passengers' seats

26    constitutes an "accident" within the meaning of the Montreal convention. *See, e.g., Rafailov v. El Al*

27    *Israel Airlines, Ltd.* (S.D.N.Y. May 13, 2008) 2008 WL 2047610 (granting summary judgment to

28    defendant: "After four hours in flight, it would seem customary to encounter a certain amount of

1   refuse on an airplane floor"); *Sethy v. Malev-Hungarian Airlines* (S.D.N.Y. 2001) 2000 WL

2   1234660, *aff'd* (2d Cir. 2001) 13 Fed. Appx. 18  (tripping over luggage in aisle during boarding not

3   an accident under article 17 of the Montreal Convention). *See also Potter v. Delta Airlines* (5th Cir.

4   1996) 98 F.3d 881 (plaintiff's twisting of her ankle while attempting to maneuver around fully

5   reclined seat of the passenger in front of her held not an "accident" because not caused by an unusual

6   event).

7          In its various correspondence to Air France's counsel, plaintiff's counsel referred to two

8   cases which it alleged support plaintiff's position, *Gezzi v. British Airways* (9th Cir. 1993) 991 F.2d

9   603, and *Wiprank v. Air Canada* (C.D. Cal. May 15, 2007) 2007 WL 2441066.  Both are wholly

10  distinguishable; indeed, they support Air France's position.  *Gezzi* involved a passenger who fell

11  down stairs used to provide access to the plane.  The court entered a specific finding that the

12  accident was caused by water on the steps, and held that "the presence of water on the stairs qualifies

13  as an 'accident' because it was both 'unexpected' and 'unusual' and 'external to' Gezzi." 991 F.2d

14  at 605.  *Wiprank* involved hot tea which spilled into a passenger's lap when the passenger seated in

15  front of her moved around in his seat.  The court held that although it was common for passengers to

16  move around in their seats, it was not common for such movements to cause such a jolt as to cause

17  beverages placed on seat back trays to slide off the trays.  That was deemed to be an unexpected

18  external event, resulting in liability, but neither that scenario nor the scenario in *Gezzi* is comparable

19  to Ms. Mansoor's trip in the aisle, whether she allegedly fell over her own feet or someone else's.

20  Anyone who has ever flown on an airplane is aware (and a court may take judicial notice that) feet

21  and other objects frequently protrude into the aisle.  That is not an unexpected occurrence, but

22  entirely usual and normal.

23         Plaintiff has not pled any facts tending to support that her fall and the subsequent alleged

24  injuries were the result of anything unusual or abnormal with respect to the operation or condition of

25  the aircraft.  Even taking the passenger at her word that she tripped over someone's foot or an

26  underseat carry-on that was protruding into the aisle, such an occurrence would not be an

27  "unexpected or unusual event or happening that is external to the passenger" such as would

28  constitute an "accident" under the Convention.  Rather, it falls squarely within the ambit of all the

1  cases holding this to be neither an unusual nor an unexpected event, and therefore not constituting an

2  "accident" under the Montreal Convention.

3       As noted, plaintiff also pled that Air France was negligent in failing to warn of the hazards in

4  the aisle between the seats.  On July 30, 2008, the Ninth Circuit issued an opinion, *Twardowski v.*

5  *American Airlines*, supra, which is directly relevant to that claim, and compels its dismissal.

6  Specifically, the Court of Appeals reaffirmed its earlier ruling in *Caman v. Continental Airlines,*

7  *Inc.*, 455 F.3d 1087, 1092 (9th Cir. 2006), which had held that if an in-flight occurrence does not

8  qualify as an "accident" within the meaning of the Montreal Convention (as is the case here), then

9  failing to warn about the risk of that occurrence is not an "event" for purposes of liability as an

10  "accident," adding that even if public agencies and the airlines themselves call attention to the

11  necessity of avoiding the risk at issue, that will not suffice to convert the failure to warn into an

12  "accident."  Under the holding of either case, the failure to warn claim must also be dismissed.

13  **IV.**   **Conclusion**

14       No evidence of liability on the part of Air France is or could be shown.  Indeed, even if one

15  credits plaintiff's assertion that she fell over an unidentified "hazard" such as someone else's feet, or

16  someone's underseat carry-on that was protruding into the aisle, that event would not qualify as an

17  "accident" within the plain meaning of the Montreal Convention, as it repeatedly has been construed

18  by the courts including this Circuit.

19       The Complaint should be dismissed in its entirety for failure to state a claim.

20

21  DATED: August 4, 2008         COZEN O'CONNOR

22

23  By: _____

24       CHRISTOPHER KENDE
     Attorneys for AIR FRANCE KLM AIRLINES

25

26

27

28