1
2
3
4

PAUL L. VAN LOON, ESQ. CA SBN 194382
**VAN LOON & ASSOCIATES**
1061 Tierra Del Rey, Suite 204
Chula Vista, CA 91910
Telephone: (619) 591-1005
Facsimile: (619) 591-1010

5
6
7
8
9

BRIAN J. LAWLER, ESQ. CA SBN 221488
ALEXANDRA G. TAYLOR, ESQ. CA SBN 256963
**PILOT LAW, P.C.**
450 B Street, Suite 1430
San Diego, CA  92101
Telephone: (619) 255-2398
Facsimile: (619) 231-4984

10

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

11

SOUTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19
20
21
22

VIOLETTE MANSOOR, an individual,

    Plaintiff,

    v.

AIR FRANCE KLM AIRLINES, a
corporation,

    Defendant.

Case No.  08 CV 0828 JM RBB

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
PLAINTIFF VIOLETTE MANSOOR'S
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM UPON WHICH RELIEF
CAN BE GRANTED (FRCP 12(b)(6))**

Judge:      Hon. Jeffrey T. Miller
Magistrate:  Judge Ruben B. Brooks

Date:       September 26, 2008
Time:       1:30 p.m.
Courtroom: 6

23
24
25

    Plaintiff Violette Mansoor hereby provides the following Memorandum of Points and

Authorities in Support of her Opposition to Defendant's Motion to Dismiss for Failure to State a

Claim Upon Which Relief Can Be Granted:

26

/ / /

27

/ / /

28

/ / /

1       ## I.    OVERVIEW

2               Plaintiff Violette Mansoor brought this action for personal injuries sustained aboard Air

3       France Flight 307 while traveling from Hartsfield Jackson International Airport, Atlanta, Georgia,

4       to Charles de Gaulle International Airport, Paris, France, on May 10, 2006.  Approximately four

5       hours before arrival in Paris, Mrs. Mansoor tripped on a loose impediment in the aisle while en

6       route to the lavatory causing her to fracture her left hip and break her right arm.  For four hours,

7       Ms. Mansoor suffered excruciating pain while awaiting the plane's arrival in Paris.   Upon

8       landing, Ms. Mansoor was taken to the hospital where she underwent extensive surgery.  Several

9       weeks later, Ms. Mansoor was forced to endure additional treatment and physical therapy and has

10      since suffered from constant pain and anguish as a result of the injuries she sustained.

11              On May 7, 2008, Plaintiff filed a complaint against Defendant Air France alleging

12      "Personal Injuries Pursuant to Articles 17 and 21 of the Montreal Convention 1999."  (Complaint

13      at 5:5).  After an unsuccessful attempt at mediation, Defendant filed the present Motion to

14      Dismiss premising its argument on the ground that "courts have repeatedly dismissed claims

15      involving trips and falls on aircraft, even when over objects in the aisles, on the basis that those

16      are not 'unexpected or unusual events' within the meaning of the Convention."  (Defendant's

17      Motion at 2:4-6).

18              Defendant's Motion to Dismiss fails in that Plaintiff's Complaint alleges facts sufficient to

19      state a legally cognizable claim.  More particularly, Plaintiff has alleged the occurrence of an

20      accident onboard Defendant's aircraft that caused Plaintiff substantial bodily injury, thus

21      mandating relief under Article 17 of the Montreal Convention.  Denial of Defendant's Motion is

22      further warranted given that Defendant's argument derives from two unreported cases from the

23      Southern District of New York that are neither legally binding nor serve as sound precedent for

24      this court.

25      ## II.    FACTUAL BACKGROUND

26              On May 10, 2006, 79-year-old Mrs. Mansoor was traveling aboard Air France Flight 307

27      from Hartsfield Jackson International Airport, Atlanta, Georgia, to Charles de Gaulle

28      International Airport, Paris, France en route to the Emirate of Dubai for her granddaughter's

- 2 -

1    wedding.  Approximately four hours before the plane's arrival in Paris, Mrs. Mansoor stood up to

2    use the lavatory.  While walking down the aisle, she tripped and fell on an unidentified loose item

3    in the aisle causing a fracture of her left hip and a break in her upper right arm. When on-flight

4    physician Dr. Strange came to Mrs. Mansoor's assistance, she was conscious and described the

5    incident to him in great detail, in part explaining that she tried to avoid hitting her head on any

6    hard objects as she fell.  Both Dr. Strange and Mrs. Mansoor attribute the fall to "an accident" and

7    not to a lack of consciousness.  Despite Dr. Strange's assistance, Mrs. Mansoor suffered from the

8    overwhelming pain of her injuries for the remaining four hours of flight.

9        Upon landing in Paris, Mrs. Mansoor was transported by ambulance to Robert Ballanger

10   Hospital.  Her broken arm was treated and she underwent emergency surgery to mitigate further

11   damages to her fractured hip.  The shock of her injuries along with the insurmountable language

12   barrier rendered her unable to communicate with those around her.  Fearful and alone she

13   remained under the hospital's care until June 2, 2006.  During Mrs. Mansoor's twenty-three day

14   long stay in the hospital, she was assured that Air France would provide complimentary passage

15   for her and a companion back to San Diego, California.  When Mrs. Mansoor and her daughter-

16   in-law, who had come from San Diego to assist her, arrived at Charles de Gaulle International

17   Airport to return home, they suffered the additional indignity of having Air France disclaim any

18   knowledge of their earlier promise of free travel back to San Diego.  Mrs. Mansoor was forced to

19   purchase two return flight tickets at a combined premium fare rate of $18,693.96 USD.

20       Immediately upon her return to San Diego, Mrs. Mansoor was admitted to Villa Las

21   Palmas Healthcare Facility, where she underwent three weeks of extensive treatment and physical

22   therapy for her injured arm, shoulder, and hip.  Mrs. Mansoor is now restricted to walking with

23   the assistance of a cane and requires continuing rehabilitation services to combat the ongoing,

24   painful symptoms caused solely by her accident aboard Air France Flight 307.

25                        III.   **LEGAL STANDARD**

26   **A.     MOTION TO DISMISS**

27       A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

28   12(b)(6) "is viewed with disfavor and is rarely granted." Lowrey v. Texas A & M Univ. Sys.,

1    117 F.3d 242, 247 (5th Cir. 1997). In making its determination, the court accepts the allegations

2    in the complaint as true and draws all reasonable inferences in a light most favorable to the

3    plaintiff. Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 109 (1979); Warth v. Seldin,

4    422 U.S. 490, 501 (1975); Conley v. Gibson, 355 U.S. 41, 48 (1957); Wright & Miller, Federal

5    Practice & Procedure §1350, p. 551; see also Jenkins v. McKeithen, 395 U.S. 411, 421 (1969);

6    Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir.2005).

7        The pleading requirement in federal court is often referred to as "notice pleading" and is

8    captured in Article 3, Rule 8(a) of the Federal Rules of Civil Procedure, which requires that a

9    pleading stating a claim for relief must contain, in part, "a short and plain statement of the claim

10   showing that the pleader is entitled to relief." As it relates to motions to dismiss, the Supreme

11   Court recently decided that the inquiry should be whether the complaint contains "enough facts to

12   state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. ___,

13   127 S.Ct. 1955, 1969, 1974, (2007). Under this standard, a "plaintiff must 'nudge [ ] [his] claims

14   across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at

15   Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic, 127

16   S.Ct. at 1974).

17       Plausibility, however, "does not impose a probability requirement at the pleading stage; it

18   simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence"

19   to support the plaintiff's claim. Bell Atlantic, 127 S.Ct. at 1965. The court will dismiss a

20   complaint for failure to state a claim only if it "'appears beyond doubt that the plaintiff can prove

21   no set of facts in support of his claim which would entitle him to relief.'" Hamlin v. Vaudenberg,

22   95 F.3d 580, 583 (7th Cir.1996) (quoting Conley, 355 U.S. at 45-46); Swierkiewicz v. Sorema

23   N.A., 534 U.S. 506, 514 (2002) ("A court may dismiss a complaint only if it is clear that no relief

24   could be granted under any set of facts that could be proved consistent with the allegations."). A

25   Plaintiff's brief may always be used "to clarify allegations in her complaint whose meaning is

26   unclear." Pegram v. Herdrich (2000) 530 U.S. 211, 230. Thus, when evaluating a motion to

27   dismiss, the court is tasked only with the responsibility of determining the sufficiency of the

28   complaint and not the merits of the lawsuit. Fed.R.Civ.P. 12(b)(6); United States v. Clark

- 4 -

County, Ind., 113 F.Supp.2d 1286, 1290 (S .D. Ind.2000); Mallett v. Wisconsin Div. of Vocational Rehabilitation, 130 F.3d 1245, 1248 (7th Cir.1997); Porter v. DiBlasio, 93 F.3d 301, 305 (7th Cir.1996).  211, 230, fn. 10.   When evaluating whether leave to amend is appropriate, "new" facts in Plaintiff's opposition must be considered to determine if to grant leave to amend or to dismiss with or without prejudice.  Orion Tire Corp. v. Goodyear Tire & Rubber Co. (9th Cir. 2001) 268 F.3d 1133, 1137.  As will be shown, Plaintiff's complaint sufficiently states a cause of action for personal injuries pursuant to Articles 17 and 21 of the Montreal Convention 1999 such that Defendant's Motion should be denied.

### B.    CAUSE OF ACTION

Although Defendant's Motion alleges it is "not entirely clear whether the Complaint means to impose any state law claims," Plaintiff's Complaint clearly refrains from implicating any legal theories premised on state law.  (Defendant's Motion at 2:24-25).   In fact, Plaintiff's Complaint makes no reference to state law and emphatically asserts that "Pursuant to the provisions of Article 17 of the Montreal Convention 1999, the defendant is liable for damages sustained by the plaintiff as a result of the injuries she suffered as a result of the accident onboard Flight 307 on May 10, 2006." (Complaint at 5:10-12).  Defendant's Motion to Dismiss is therefore restricted to an analysis solely with regard to Plaintiff's cause of action pursuant to the rights and remedies set forth under the Montreal Convention.

### IV.    ARGUMENT

### A.    PLAINTIFF'S COMPLAINT PLEADS FACTS SUFFICIENT TO STATE A CAUSE OF ACTION UNDER ARTICLES 17 AND 21 OF THE MONTREAL CONVENTION

Plaintiff's Complaint properly pleads facts sufficient to state a cause of action pertaining to bodily injuries sustained by Plaintiff from the occurrence of an accident onboard Defendant's aircraft.  As Defendant correctly notes, Article 17 of the Montreal Convention governs such claims and "applies to any personal injury or death occurring onboard an aircraft while the passenger is either boarding, traveling onboard or disembarking." (Defendant's Motion at 2:20-22); See also Montreal Convention, art. 17(1).  Article 21 imposes strict liability on a carrier in an amount not to exceed 100,000 Special Drawing Rights ("SDR") for death or bodily injury

- 5 -

1   sustained by a passenger caused by an accident onboard the aircraft.  Montreal Convention, art.

2   17(1) & 21.  To the extent that the passenger's damages exceed 100,000 SDR, the carrier is

3   absolved from liability if "the carrier proves that: (a) such damage was not due to the negligence

4   or other wrongful act or omission of the carrier or its servants or agents; or (b) such damage was

5   solely due to the negligence or other wrongful act or omission of a third party."  Montreal

6   Convention, art. 21.

7           *1.     Plaintiff's Complaint properly alleges the occurrence of an "accident"
                    as defined by Article 17 of the Montreal Convention*
8
9           In the seminal Supreme Court case interpreting Article 17 of the Montreal Convention, the

10  Court noted that the word "accident" is usually defined as a "fortuitous, unexpected, unusual, or

11  unintended event."  Air France v. Saks, 470 U.S. 392, 405 (1985).  The primary requirement

12  necessary to implicate the provisions of Article 17 is that the accident is the cause of the injury

13  rather than the injury itself being an accident.  Id. at 399 ("The text of the Convention thus

14  implies that, however we define 'accident,' it is the *cause* of the injury that must satisfy the

15  definition rather than the occurrence of the injury alone.").  This definition, the Court stressed,

16  "should be flexibly applied after assessment of all the circumstances surrounding a passenger's

17  injuries."  Id. at 405.  "In cases where there is contradictory evidence, it is for the trier of fact to

18  decide whether an 'accident' as here defined caused the passenger's injury."  Id.

19          Defendant deceptively claims that "As the cases have made clear, an 'accident' is not

20  merely an abnormal reaction of a passenger to some ordinary condition or happening; rather, it

21  must [sic] the result of abnormal or unusual operation of the aircraft."  (Defendant's Motion at

22  3:13-15).  Notably, however, this restrictive interpretation, has never been adopted by the Ninth

23  Circuit.  Gezzi v. British Airways PLC, 991 F. 2d 603, fn. 4 (9th Cir. 1993).  In fact, when

24  specifically addressing this issue, the Ninth Circuit noted that "[this] suggestion was never

25  included in the text of the Warsaw Convention."  Id.  The Gezzi court thus emphasized that

26  "Article 17 requires only that the 'accident' take place 'on board the aircraft or in the course of

27  any of the operations of embarking or disembarking.'"  Id.

28          Under the Saks framework, a plaintiff pursuing an Article 17 claim must show that her

- 6 -

1   injury was caused by "(1) an external event; (2) that was unusual or unexpected; and (3) took

2   place during the operation of the aircraft." <u>Wiprank v. Air Canada</u> (C.D. Cal. May 15, 2007)

3   2007 WL 2441066 (Plaintiff's Complaint, which alleged that she suffered second and third degree

4   burns from tea that spilled on her lap and legs after another passenger reclined the seat in front of

5   her, was sufficient to defeat Defendant's Motion for Summary Judgment as it pertained to the

6   issue of "accident".). Inline with these guidelines, Plaintiff has clearly pled facts sufficient to

7   allege the occurrence of an "accident" as defined by Article 17 of the Montreal Convention. In

8   particular, the Complaint states, "Plaintiff's injuries alleged herein resulted from an accident on

9   board the defendant's aircraft in the course of international carriage within the meaning of the

10  Montreal Convention." (Complaint at 3:24-26). Plaintiff further incorporates the necessary

11  "fortuitous, unusual, unexpected or unintended element" by alleging that "During Air France

12  Flight 307 from Atlanta to Paris on May 10, 2006, the plaintiff sustained serious personal injuries

13  when she tripped and fell as a result of a hazard in the walkway onboard the aircraft." (Complaint

14  at 5:1-3). Additionally, Plaintiff repeatedly indicates that the serious injuries she sustained were

15  "the result of an accident," thus properly implicating Article 17's provisions. (Complaint at 3:24;

16  5:8, 14).

17          In addition to the language contained in Plaintiff's Complaint itself, which expressly detail

18  the occurrence of an accident giving rise to Plaintiff's injuries, three cases are particularly

19  instructive. As in <u>Gezzi,</u> the Ninth Circuit has concluded that the presence of a hazard constitutes

20  an "accident" within the meaning of the Montreal Convention as it is "'unexpected or unusual'

21  and 'external to'" to Plaintiff. <u>Gezzi</u> 991 F.2d at 605 (the presence of the water on the stairs that

22  caused Gezzi to fall and slide to the bottom as he descended "qualifies as an 'accident' because it

23  was both 'unexpected or unusual' and 'external to' Gezzi.").[1] Moreover, in <u>Kwon v. Singapore</u>

24  <u>Airlines,</u> 356 F.Supp.2d 1041, 1044-45 (N.D.Cal.2003), the court concluded it was an "accident"

25  when Plaintiff's toe was injured after another passenger, struggling to put her luggage in an

26  overhead bin, tripped and stepped on his foot. Similarly, falling liquor bottles from an overhead

---

[1] Defendant improperly misguides the court by wrongly asserting that Plaintiff "allegedly fell over her own feet or someone else's" in its unsuccessful attempt to distinguish <u>Gezzi.</u>

1    bin causing bodily injury to a fellow passenger have also been deemed an "accident" under

2    Article 17's guidelines. <u>Maxwell v. Aer Lingus, Ltd.</u>, 122 F. Supp.2d 210, 212-13 (D.Mass.

3    2000) (court held that "[i]n weighing the vicissitudes of modern day air travel, the hazard of being

4    struck by a falling bottle surely ranks on a par with that of being bumped by a stumbling drunk or

5    a reclining seat, events that have been found to be an Article 17 'accident.'").

6         In support of its position that "courts have routinely dismissed claims contending that

7    tripping over objects in the walkway or surrounding passengers' seats constitutes an accident,"

8    Defendant relies upon two unreported cases, citation to which is often looked upon with disfavor.

9    Both cases originate from the Southern District of New York and thus clearly have no binding

10   effect or precedential value to this court.

11        Notably, the single case Defendant cites in support of its Motion, <u>Potter v. Delta Airlines</u>

12   (5th Cir. 1996) 98 F.3d 881, is distinguishable.  In <u>Potter</u>, the court's decision rested on the fact

13   that Mrs. Potter twisted her knee as she turned to enter the row and sit down.  Unlike the case at

14   hand, no mention is made nor is any consideration given to whether a hazard or other loose

15   impediment caused Mrs. Potter's injuries.  The presence of a hazard, on the other hand,

16   constitutes an unexpected occurrence and therefore gives rise to the classification of Plaintiff's

17   fall as an "accident."  *See*, *e.g.,* <u>Gezzi</u>, *supra*, 991 F. 2d 603.

18              **2.    *Plaintiff's Complaint states facts sufficient to allege a causal connection***
                        ***between Plaintiff's injuries and the accident***
19

20        In addition to stating facts sufficient to allege an "accident", Plaintiff has also pled the

21   facts necessary to establish the causal element between the occurrence of the accident and

22   Plaintiff's bodily injuries.  Although Defendant refrains from addressing this point, brief

23   reference to Plaintiff's allegations further reinforces the merits of Plaintiff's Complaint and

24   prayer for relief.  More specifically, Plaintiff's Complaint, on numerous occasions, states that the

25   "injuries alleged herein resulted from an accident on board the defendant's aircraft in the course

26   of international carriage within the meaning of the Montreal Convention."  (Complaint at 3:24-

27   26; 5:14-20, 24-26; 6:1-21).  Plaintiff's Complaint additionally details Defendant's negligence as

28   it relates to Plaintiff's injuries, specifically asserting that Defendant "(a) Fail[ed] to take

- 8 -

Case 3:08-cv-00828-JM-RBB    Document 8    Filed 08/28/2008    Page 9 of 10


1    necessary precautions to anticipate the conditions that cause the hazardous condition onboard

2    Flight 307…(b) Fail[ed] to avoid the hazardous conditions that caused the plaintiff's accident

3    onboard Flight 307 that resuled in plaintiff's injury; and (c) Faile[ed] to warn the plaintiff of

4    hazards in the walkway/aisle between the seats…" (Complaint at 6:3-11). Plaintiff's Complaint

5    thus properly alleges both the occurrence of an accident and the causal connection to Plaintiff's

6    bodily injuries such that Defendant's Motion should be denied.

7         Policy further dictates a decision in Plaintiff's favor. Kwon, supra, 356 F.Supp.2d at

8    1044-45. In Kwon, the court noted, "It is also hard to see what policy is advanced by absolving

9    an airline of responsibility for such "garden variety" torts which occur on airplanes. It neither

10   compensates the injured passenger nor provides any incentive for the airline to attempt to avoid

11   'common' accidents." It is clear from Plaintiff's Complaint that the necessary elements needed to

12   establish the occurrence of an "accident" within the meaning of the Montreal Convention have

13   been properly alleged. Plaintiff has thus more than "nudge[d] [ ] [her] claims across the line from

14   conceivable to plausible" entitling her to relief under the protections afforded by the Montreal

15   Convention. Ridge at Red Hawk, L.L.C., supra, 493 F.3d at 1177 (quoting Bell Atlantic, 127

16   S.Ct. at 1974). In any event, even if the court deems otherwise, "[i]n cases where there is

17   contradictory evidence, it is for the trier of fact to decide whether an 'accident' as here defined

18   caused the passenger's injury," such that granting Defendant's Motion to Dismiss would be

19   improper. DeMarines, supra, 580 F.2d 1193 (3rd Cir. 1978).

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

- 9 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS          CASE NO. 08-CV-0828-JM-RBB

1

### V.    CONCLUSION

2

Under the standards governing motions to dismiss and applicable law regarding claims

3   predicated on Article 17 of the Montreal Convention, Plaintiff's Complaint properly alleges facts

4   sufficient to state a cause of action for bodily injury caused by an accident onboard Defendant's

5   aircraft.   In the alternative, Plaintiff submits that has demonstrated the ability to include more

6   specificity in the Complaint which would at least justify an order allowing leave to amend.

7

8   Dated: August __28__, 2008                    PILOT LAW, P.C.
                                                   VAN LOON & ASSOCIATES

9

10

11                                                 BRIAN J. LAWLER
                                                   ALEXANDRA G. TAYLOR
12                                                 PAUL L. VAN LOON
                                                   Attorneys for Plaintiff
13                                                 Violette Mansoor

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28